IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | 02: 05cr0385-02 |
| ) | |
| CLARON HANNER ) | |

**MEMORANDUM OPINION AND ORDER OF COURT**

May 14, 2007

On April 2 and 3, 2007, the Court conducted an evidentiary hearing and heard legal arguments on the instant MOTION TO SUPPRESS EVIDENCE SEIZED FROM CRICKET TELEPHONE 412-628-5290 filed by Claron Hanner (*Document No. 275-2*). Defendant Hanner seeks to suppress any and all evidence seized from the Cricket cellular telephone itself, as a result of the search having been conducted without a search warrant.

All parties were represented by counsel who presented and argued the issues skillfully and effectively. Defendant Hanner was present in the courtroom for both the evidentiary hearing and the legal arguments. Five witnesses testified during the hearing: Dena Berardi, Paul Frank Cimino, and Detective Robert R. Heberle, Jr., were called by Defendant Hanner; Derrick Maurer and Khaliah Solomon were called by the government.

Based on the testimony and evidence presented at the suppression hearing which entailed credibility determinations by the Court and the applicable law, the Court will deny the Motion to Suppress Evidence Seized from Cricket Telephone 412-628-5290 because the Court finds that Defendant Hanner had no reasonable expectation of privacy in the subject cellular telephone. In the alternative, the Court finds that Hanner voluntarily abandoned said cellular telephone.

**Background**

A. <u>Testimony of Detective Robert R. Heberle, Jr.</u>

Detective Robert R. Heberle, Jr. ("Detective Heberle") has been employed by the Beaver County detective's office since 1995. In the early morning hours of January 20, 2004, he was called to begin an investigation into the murder of Frank Helisek, Jr. Detective Heberle testified that within hours of the shooting of Mr. Helisek a Cricket cellular telephone was found in an alleyway adjacent to the Helisek home. At approximately 8:00 A.M. on January 20, 2004, Detective Heberle learned that the registered owner of the cell phone was Derrick Maurer.

Mr. Maurer was interviewed by Detective Heberle on January 20, 2004. In the course of the interview, he learned that Mr. Mauer had purchased a cellular telephone and had given it to an individual to use.[1] He did not identify Defendant Hanner as the person to whom he had given the cell phone which he had purchased.

During the course of his investigation, Detective Heberle obtained subscriber records from Cricket Cellular Phone Company for the period 2003 - 2004 for subscriber number 412-628-5290. The Cricket records do not reflect that this particular cellular telephone with this subscriber number was ever reported stolen. Although the subscriber records reflected that there were outstanding bills for usage of this cell phone, service had not been terminated as of January 20, 2004.

---

[1] However, Derrick Maurer testified that he purchased a Nextel cell phone - not the subject Cricket cellular telephone.

B.	Testimony of Dena Berardi and Paul Frank Cimino

In January 2004, Dena Berardi ("Berardi") and Paul Frank Cimino ("Cimino"), along with their children, lived at 611 Moon-Clinton Road, Allegheny County, Pennsylvania.  In the summer of 2003, Khaliah Solomon introduced them to Defendant Hanner.  They had been buying heroin from Khaliah Solomon for four (4) or five (5) months prior to meeting Defendant Hanner.  At some point in time, Berardi and Cimino also began buying heroin from Defendant Hanner.  For approximately four to six months, and for at least thirty (30) days before January 20, 2004,  Berardi and Cimino would contact Defendant Hanner by calling cellular telephone number (412) 628-5290.  Bernardo testified that no one other than Defendant Hanner would answer that phone; Cimino testified that sometimes Khaliah Solomon would answer that phone.

During the early evening hours of January 19, 2004, Berardi and Cimino met Defendant Hanner at Wanda Solomon's house in Beaver Falls to exchange money for drugs. Berardi and Cimino testified that sometime between 11:00 PM and 12:00 AM on January 19, 2004, Defendant Hanner came to their house, but he did not stay long, maybe only three or four minutes at the most.  He told Berardi that he did not have his cell phone because he had lost it. Defendant Hanner gave Cimino a handgun and asked him to hold it for him.

Several hours later, at approximately 3:00 or 4:00 A.M., Berardi and Cimino attempted to reach Defendant Hanner at (412) 628-5290 in an attempt to buy drugs, but the phone was not answered.

Berardi testified that she had given her twelve-year old son the telephone number (412) 428-5290, the number where Defendant Hanner could be reached, as a backup in case she or Cimino were not around.

3

C.      Testimony of Derrick Maurer

Derrick Maurer ("Maurer") testified that in the summer of 2003, he put a cellular CL wireless telephone in his name, which was to be used by a drug supplier named "P."[2] The service provider for that phone was Nextel. He does not remember the complete phone number, but does remember that the initial numbers were "412-287."

At some point in time, Maurer learned that a number of other cellular telephones had been purchased in his name, all without his permission. Maurer testified that he did not purchase Cricket cellular telephone 412-628-5290, nor did he ever give Defendant Hanner permission to purchase any cell phone in his name. Once Maurer became aware that there were a number of unauthorized cellular telephones purchased in his name, he made efforts to have those accounts cancelled.

D.      Testimony of Khaliah Solomon

Khaliah Solomon testified that in January 2004 she was Defendant Hanner's girlfriend. At sometime shortly before 11:00 PM, on January 19, 2004, at the request of Defendant Hanner, she drove him to New Brighton, Pennsylvania. On that night, she was driving a rental car that they had gotten from her brother, Jelani Solomon. Initially, Ms.

---

[2]     Maurer testified that he knew the drug supplier only by the moniker "P"; he does not know either the first or last name of this person. Maurer testified that he had known "P" for a few months before he purchased the CL wireless phone for him. Maurer also testified that the person for whom he purchased the phone was not present in the courtroom. Defendant Hanner was in the courtroom, but was not identified by Maurer.

Solomon and Defendant Hanner were going to the Airport Plaza Hotel together,[3] but as they crossed the bridge from Beaver Falls to New Brighton, Defendant Hanner asked her to make a stop in New Brighton. Defendant Hanner instructed her to park in front of a house, either on Third or Fourth Avenue in New Brighton. She parked the car, and Defendant Hanner got out of the car. While he was gone, she locked the doors and turned up the radio.

Defendant Hanner was gone for "a few minutes," and when he returned to the car, the first thing he said to Ms. Solomon was to ask if he could use her phone. She asked him where his phone was and he told her that he had dropped it. He did not say that he dropped the phone in the alleyway, just that he dropped it. She asked him, "Why don't you go get it," to which he replied "Later." Mr. Hanner called his cell phone from Ms. Solomon's phone to see if it rang in the car.

As soon as Ms. Solomon gave Defendant Hanner her cell phone, she started driving again to the hotel. Approximately forty (40) minutes later, they arrived at the Airport Plaza Hotel. During that period of time, Defendant Hanner made a number of telephone calls on her phone.

The two spent the night together at the hotel, and the next day they went to New York City. While in New York, Defendant Hanner told Ms. Solomon that he was in a lot of trouble, that he had killed someone, and that he had dropped his cell phone, although he did not know exactly where he had dropped the phone. Defendant Hanner never asked Ms. Solomon to return with him to New Brighton to find the phone.

---

[3] Ms. Solomon testified that they did not have any suitcases or any clothing with them.

5

**Discussion**

A.  <u>Defendant Hanner Does Not Have A Legitimate Expectation of Privacy in the Phone</u>

Initially, the Court observes that the proponent of a motion to suppress bears the burden of establishing that his Fourth Amendment rights were violated. *Rakas v. Illinois*, 439 U.S. 128, 130 n.2 (1978); *United States v. Acosta*, 965 F.2d 1248, 1275 n.9 (3d Cir. 1992). The burden of proof in a suppression motion is a preponderance of the evidence standard. *United States v. Matlock,* 415 U.S. 164, 178 n.14 (1974). The trial judge at a suppression hearing reviews the "credibility of the witnesses and the weight to be given the evidence, together with the inferences, deductions and conclusions to be drawn from the evidence." *United States v. Leveto*, 343 F. Supp.2d 434, 441 (W.D. Pa. 2004).

The Fourth Amendment to the United States Constitution provides the right of individuals to be free from unreasonable searches and seizures. U.S. Const. Amend IV. In order to challenge the reasonableness of a search and seizure, the proponent must possess a "legitimate expectation of privacy." *United States v. Felton*, 753 F.2d 256, 259 (3d Cir. 1985); *see also Rawlings v. Kentucky,* 448 U.S. 98, 104 (1980); *United States v. Conley*, 856 F. Supp. 1010, 1016-17 (W.D. Pa. 1994). The proponent must show both that he had a subjective expectation of privacy and that the expectation was one which society would recognize as reasonable. *Minnesota v. Carter,* 525 U.S. 83, 88 (1998). While neither ownership nor lawful possession are determinative, they are often dispositive factors; a defendant seeking to establish standing bears the burden of demonstrating "that he gained possession from the owner or someone with the authority to grant possession." *United States v. Arango,* 912 F.2d 441, 445-46 (10th Cir. 1990).

Accordingly in the matter *sub judice*, at the outset, Defendant Hanner bears the burden to establish his legitimate expectation of privacy in the Cricket cellular telephone 412-628-5290.  *United States v. Perez,* 280 F.3d 318, 338 (3d Cir. 2002).  If he fails to establish a "legitimate expectation of privacy" in the telephone, then he is foreclosed from asserting a challenge that the search was executed illegally.  *United States v. Felton,* 753 F.2d 256, 259 (3d Cir. 1985) (*quoting Rawlings v. Kentucky,* 448 U.S. 98, 104 (1980); *see Rakas v. Illinois,* 439 U.S. 128  (1978).

From the unrebutted evidence presented during the suppression hearing, the following has been established by a preponderance of the evidence:

- Cricket cellular telephone 412-628-5290 was found by the police in the alleyway adjacent to the house and crime scene where Frank Helisek, Jr., had been shot on  the night of January 19, 2004;

- The telephone subscriber records for Cricket cellular telephone 412-628-5290 reflect Derrick Maurer as the subscriber;

- The telephone subscriber records do not list Defendant Hanner as an authorized user of the subject telephone;

- The listed subscriber, Derrick Maurer, did not purchase this particular cellular telephone;

- The listed subscriber, Derrick Maurer, never gave permission or authorized Defendant Hanner to possess or use Cricket cellular telephone 412-628-5290;

- Periodically, Dena Berardi and/or Paul Cimino would contact Defendant Hanner at cellular telephone 412-628-5290; and

• With the exception of Khaliah Solomon, no one other than Defendant Hanner would answer cellular telephone 412-628-5290.

What remains unknown and without evidentiary support, however, is how Defendant Hanner came to be in possession of Cricket cellular telephone 412-628-5290 and/or whether Defendant Hanner was an authorized user of the phone.

Defendant Hanner argues that because Dena Berardi and Paul Cimino testified that they would periodically call Defendant Hanner at 412-628-5290 over a few month period prior to January 20, 2004, he, therefore, had a possessory interest and that an expectation of privacy in the subject cell phone. However, the Court finds and rules that this evidence and argument is not sufficient to establish that Defendant had a <u>legitimate</u> possessory interest in the subject cell phone or that he had a <u>reasonable</u> expectation of privacy in the cell phone.  Notably, Defendant Hanner did not testify nor did he present an affidavit or any other evidence which would support his argument that he was in legitimate possession of the cell phone. As the United States Supreme Court has stated:

> A burglar plying his trade in a summer cabin during the off season may have a thoroughly justified subjective expectation of privacy, but it is not one which the law recognizes as 'legitimate.' His presence, in the words of *Jones* [ *v. United States,* 362 U.S. 257, 267, 80 S.Ct. 725, 734, 4 L.Ed.2d 697 (1960) ], is 'wrongful,' his expectation of privacy is not one that society is prepared to recognize as 'reasonable.' *Katz v. United States,* 389 U.S., at 361, 88 S.Ct., at 516 (Harlan, J., concurring). And it would, of course, be merely tautological to fall back on the notion that those expectations of privacy which are legitimate depend primarily on cases deciding exclusionary-rule issues in criminal cases. Legitimation of expectations of privacy by law must have a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society.

*Rakas v. Illinois,* 439 U.S. 128, 143-144, n. 12 (1978).

Without any substantively meaningful evidence to support Defendant Hanner's argument that he had a subjective expectation of privacy, one which society is prepared to recognize as "reasonable," the Court finds that Defendant Hanner has not carried his burden to establish that he had a legitimate reasonable expectation of privacy in the Cricket cellular telephone 412-628-5290 and thus, he is foreclosed from challenging the warrantless search of the Cricket cellular telephone.

B.   Abandonment

Assuming, *arguendo*, however, that Defendant Hanner has proven by a preponderance of the evidence that he had a legitimate reasonable expectation of privacy in the subject Cricket cellular telephone, his motion to suppress would still be denied. The police recovered the subject cellular telephone after Defendant Hanner voluntarily abandoned it; thus, Defendant Hanner relinquished any legitimate expectation of privacy that he may have had.

An individual has no reasonable expectation of privacy in abandoned property. *Abel v. United States,* 362 U.S. 217, 241 (1960); *United States v. Fulani*, 368 F.3d 351, 354 (3d Cir. 2004). Abandonment for purposes of the Fourth Amendment differs from abandonment in property law; here the analysis examines the individual's reasonable expectation of privacy, not his property interest in the item. *See United States v. Lewis,* 921 F.2d 1294, 1302 (D.C. Cir.1990). A court must determine from an objective viewpoint whether property has been abandoned. *See United States v. Perkins,* 871 F. Supp. 801, 803 (M.D. Pa.1995), *aff'd,* 91 F.3d 127 (3d Cir. 1996) (table). Proof of intent to abandon property must be established by clear and unequivocal evidence. *See United States v. Moody,* 485 F.2d 531, 534 (3d Cir. 1973). When a

person abandons property, he also relinquishes any expectation of privacy in that property. *Fulani*, 36 F.3d at 354.

Applying these standards, if Defendant Hanner abandoned the Cricket cellular telephone, then he also yielded any reasonable expectation of privacy which he may have had in the cell phone.

Here, the unrebutted evidence offered at the suppression hearing establishes that upon returning to the parked car, Defendant Hanner asked to use Ms. Solomon's cell phone. When she asked him where his phone was, he replied that he had "dropped it." Ms. Solomon testified that she asked him, "Why don't you go get it," to which Defendant Hanner replied, "Later." Thereafter, Defendant Hanner used Ms. Solomon's cell phone to place some calls, and he never returned to the place where he dropped the cell phone to retrieve it. Furthermore, while in New York City, Defendant Hanner told Ms. Solomon that he was in a lot of trouble, that he had killed someone, and that he had dropped his cell phone. Again, he never returned to retrieve it.

The Court finds and rules that Defendant Hanner manifested his intent to abandon the cellular telephone in a clear and unequivocal way. Therefore, the Court finds and rules that Defendant Hanner forfeited any legitimate expectation of privacy he may have had in the Cricket cellular telephone and he does not have standing to challenge the warrantless search of cellular telephone 412-628-5290 on Fourth Amendment grounds.

Accordingly, Defendant's Motion to Suppress Evidence will be denied.

**Conclusion**

For all the hereinabove stated reasons, the Motion to Suppress Evidence filed by Defendant Claron Hanner will be denied.

An appropriate Order follows.

McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 02: 05cr0385-02 |
| | ) | |
| CLARON HANNER | ) | |

## ORDER OF COURT

AND NOW, this 14th day of May, 2007, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED AND DECREED** that the MOTION TO SUPPRESS EVIDENCE SEIZED FROM CRICKET TELEPHONE 412-628-5290 filed by Claron Hanner is **DENIED.**

BY THE COURT:

s/Terrence F. McVerry
United States District Court Judge

cc:   Tina O. Miller , Esquire
Assistant U.S. Attorney
Email: tina.o.miller@usdoj.gov

Leo M. Dillon,
Assistant U.S. Attorney
Email: Leo.Dillon@usdoj.gov

Martin A. Dietz, Esquire
Email: MDietzEsq@aol.com

Robert E. Stewart , Esquire
Email: restjs@msn.com

Caroline M. Roberto, Esquire
Email: croberto@choiceonemail.com

Jay T. McCamic , Esquire
McCamic, Sacco, Pizzuti & McCoid, PLLC
Email: jtmccamic@mspmlaw.com